Case numbers 255738 and 255739 Rachel Welty et al. v. Bryant Dunaway et al. or arguments not to exceed 15 minutes per side. Ms. Clark, you may proceed for the appellant. Good afternoon. Good afternoon, Your Honor, and may it please the court. Madeline Clark, on behalf of the appellant, may I reserve three minutes for rebuttal? Yes. This court should reverse for three reasons. First, plaintiffs lack standing. They cannot establish a certainly impending threat of enforcement, and by their own testimony, the statute does not prescribe their conduct. Under Friends of George's, that's fatal to standing. Second, plaintiffs lack any path to victory on the merits. They are not entitled to as-applied relief because their conduct does not violate the statute, and they are not entitled to facial relief because they did not create the requisite evidentiary record. Third, the district court's injunction is too broad. Relief must be tailored to the applications of the law that violate the Constitution and to the parties. So here, the injunction should not cover the application to adults recruiting unemancipated minors to obtain abortions that are legal in Tennessee, an application that even plaintiffs agree is constitutional, nor should the injunction extend beyond the parties. Article III and the Judiciary Act of 1789 provide independent limitations on the ability of federal courts to issue relief that extends beyond the parties. Can I ask you a question? So on the Article III point, you know, what is it? Susan B. Anthony says it's arguably prescribed. I mean, so in other words, the Article III analysis of the statute's coverage and the merits analysis of the statute's coverage are not the same. I mean, maybe it's Venn diagram. It's got some overlap, but they're just not the same. And I guess I see some force to your argument on the merits that the statute doesn't cover what they're doing, but I guess I struggle a little bit with why they can't say it's arguably prescribed and they have a right to come to court to make sure it doesn't cover them. I mean, you can almost imagine this. Think of this just a little differently as a deck action. Like, you know, there's like we're really into abortion advocacy. We do a lot of this. The statute's broadly written. We want to make sure what we're doing isn't covered. They couldn't come to court to have a court just, you know, decide what the parameters of the law are. That seems, you know, unlikely and almost unfair. So, Your Honor, under the Supreme Court's decision in Dry House and under this court's precedent, plaintiffs do not need to prove plaintiffs ordinarily do not need to prove that their conduct is 100 percent prescribed by the statute. There's two things going on here. So, first is the question of whether in deciding whether the statute arguably prescribes the plaintiff's conduct, the court needs to interpret the statute or it just needs to adopt a plausible or arguable interpretation of the statute. And based on this court's decision in front of Georges, the court first interprets the statute and then decides whether it arguably prescribes the plaintiff's conduct. And then here, however, where the plaintiffs have come into court and testified that their conduct does not meet an element of the statute, as this court held in front of Georges, the statute then does not arguably prescribe this conduct. This might be a different case for purposes of standing if plaintiffs had not... Why does it make a difference to you? In other words, why do you care? And if we adopt your interpretation of the statute at the end of the day, but say there's Article 3 standing, why does it make a difference to you? On the as-applied free speech, you would clearly win because their stuff doesn't count as recruitment. And then you'd have the net place, you know, numerator-denominator thing, and it would be a pretty small numerator. As a practical matter, Your Honor, I think we would be happy to win this case on any front, but in terms of we have an interest in this court abiding by the limits imposed by Article 3 and the test that the Supreme Court set out in Dry House and that this court has applied is key to figuring out whether plaintiffs actually have that certainly impending threat of prosecution that gives them standing to come into court. And here, where plaintiffs have said that they do not violate the statute, and where you have the district attorneys who prosecute and enforce the statute saying, we agree what these plaintiffs plan to do... Yeah, but I mean, but they still, Article 3 still has to cover the facial. So in other words, the facial, I mean, once you get to facial, you have to decide what it means, because how else can you do the numerator-denominator? But they're still allowed, you can still have, can't you still have Article 3 standing to bring a facial challenge, even if you agree it does, the statute doesn't apply to you? No, Your Honor. You can still have Article 3 standing to bring a facial challenge if the statute is constitutional as applied to you, but the statute still needs to arguably prescribe your conduct to give the plaintiff the standing that allows them to come into court. I think this Court explained this well in its decision in prime media, where it was discussing an over-breath challenge, and it had a plaintiff who I believe had an injury as to one part of a statute and not the other, and made a similar type of argument that because it was an over-breath challenge, they could still come in, and the Court explained that the over-breaths, whatever loosening it does with respect to standing, it's more with respect to prudential standing, where the plaintiff is essentially raising the rights of others. But the plaintiff still needs their own Article 3 injury. So here, if, as here, where plaintiffs have testified that they do not have the intent that violates the statute, and the district attorneys agree and have disavowed enforcement against these plaintiffs and their specific conduct, plaintiffs simply don't have standing. Why it's arguable just because there's a Ninth Circuit decision that has a similar statute, and they said it applied. Why isn't that enough to get you arguably? Because this Court needs to look at the statute that has been enacted by Tennessee, which is not identically worded. I mean, the word intentional, that's it, right? I mean, the reason that case shouldn't make much of a difference here is they didn't apply the right numerator-denominator. They didn't get that right at all. But when it comes to Article 3, I feel like if I'm in the shoes of the plaintiffs and I see another court construing it this way with the only space being the word intentionally, I could see being a little nervous. Perhaps if it was an identical statute, but it's not. It has different language. And even putting aside that, so even if you're completely with plaintiffs and you think that on this aspect of standing, even if you think plaintiffs are right, they have shown that the statute arguably prescribes their conduct, there's still another element of standing that they need to satisfy here that they haven't, and that's credible threat of enforcement. Let me ask you about that, Kelly. Yes. And you can correct me if I'm wrong, but my understanding is sometimes your office will, you know, disclaim enforcement of a statute. You know, I think the legislature just got over its skis. The statute might violate the First Amendment, Second Amendment, and your estimation, we're not going to enforce it. And I guess what I'm wondering with this type of – and I guess you're doing a form of that here. You can correct me if I'm wrong. You're saying we're not going to enforce it broadly. You have a more narrow interpretation than your opponents do. Is that right? We certainly have a more narrow interpretation than our opponents do. I believe what you might be referring to is that sometimes the Attorney General's office does not defend the constitutionality of a statute. Right. I don't think that's quite what we're doing here. I understood. Right. Yes, we do have a – we have a narrower view of our statute than the other side here, and we think that our interpretation of the statute is correct. And we also have the district attorneys here who, when confronted with the specific conduct that the plaintiffs intend to engage in, have said, we don't think that violates the statute, and they have disavowed enforcement. Like where did they – you didn't have any sort of affidavits below from – No, we didn't. We didn't have any affidavits. Can the AG direct DAs how to enforce criminal statutes? What the DA – what the Attorney General can do, I believe, is bind the district attorneys through litigation representations the same way that any time a party comes into court and makes representations within court, it binds them in later proceedings. We have citations for that in our brief to this court's decision in Orlando. I have no doubt you found the defendants in this case who are here on behalf of them. I guess if there was a new district attorney in one of these 11 districts next week for – you know, through whatever circumstance, and that DA said, I actually think, you know, the plaintiffs are right in terms of how broad this statute reaches, and I'm going to enforce it accordingly. Could you tell them not to? I'm not sure, Your Honor. That may be a different case, but for purposes of this case, what we have is – There's nothing in the law that authorizes the Attorney General to control the action of a publicly voted district attorney, correct? Not to my knowledge, Your Honor, but I confess I – perhaps it's there and I'm not aware of it, but not to my knowledge, Your Honor. Then let's talk about the statutory language itself, because the concept of recruitment drives an awful lot of this case, and when we're talking about what recruitment actually encompasses, I don't want to lose the sight of what's actually at issue in this case. A pregnant young woman, for example. I am perplexed by the distinction that you make in your brief between pre-decision and post-decision speech, as if there is a precise moment in time that we can say that a decision has been made by that young girl. So I don't – I'm not sure that that framing comports with the reality of how that type of decision is made. It seems to me that someone in that position, faced with the probably most difficult decision of their life, knows that practical options make a difference in the decision that she would make and in the choice that she would make. So I don't see it a clean pre and post. So when you think of Welty and Bim speaking to a minor about their options to obtain and access a clean, safe, legal abortion, and that they can provide information on the access, why isn't their advice in fact the type of recruitment that this statute really is intended for? Because this statute, with respect to recruitment, prescribes something very specific. It prescribes the intentional persuasion, enticing or inducing a minor for the purposes of procuring an abortion that is illegal under Tennessee law. And all of that together requires that the adult doing the speaking have a very particular, specific intent. And Welty and Bain have testified that they never intend to persuade. And once they are talking to a minor who has already made the decision to have an abortion, they can no longer speak with the intent to persuade them for the purposes of getting that type of abortion because the decision has already been made. I guess, I mean that would be helpful if that's true, and I'm trying to understand for your case whether it's true. I mean the word induce to me can be read a little more broadly than I guess you're positing. And so if a decision is made, or even tentatively made to get an abortion in another state, and people like the plaintiff say, I'm going to help you, I'm going to encourage you, I'm going to provide you resources, is that not inducement in the sense of encouraging with the sense to influence and carry this decision into being? May I answer? Thank you. The way the statute is structured, unless the person doing that speaking has the intent for the person that they're speaking to to be induced, it is not prescribed by the statute. But even if you think plaintiff's conduct is covered here, I would, for standing plaintiffs still need to show a credible threat of enforcement and on the merits. If you think their conduct is covered here, that just means plaintiff has succeeded on their as-applied challenge, and the court should not proceed to the facial challenge, and it should modify the injunction so it applies to these specific plaintiffs and their specific conduct. I just want to ask a question about relief in CASA. You know, it says you can still get complete relief, and just what's your take on why a statewide injunction is not, quote, necessary for complete relief? Just what's your answer to that? Complete relief is relief that remedies the plaintiff's injuries completely, and here, if the law is enjoined as to plaintiff's specific conduct, they no longer have an injury, and that is complete relief as to them. And so the proper injunction is one just as to these claimants? Yes. Okay. Go ahead. Yeah. I have some questions about the extraterritorial application of this statute, which includes references to both in a criminal abortion or in abortion-inducing drugs, regardless of where the abortion is to be procured. I'm struggling with your understanding. I would like to know what your understanding is of that extraterritorial application. Would you agree that it contemplates abortions or drugs that are obtained outside of Tennessee? Yes. And would it apply to a person who recruits a minor in Tennessee and to obtain an abortion, say, in Illinois? Yes, so long as the adult had the requisite intent to violate that statute. And could it be applied to an out-of-state resident who recruits a minor Tennessean to obtain an abortion in Illinois? If the person doing the recruiting is entirely out-of-state the whole time they're doing the recruiting and they're recruiting a minor in Tennessee to leave the state, possibly, but I'm not confident at this moment. What I'm struggling with this is about the federalism concepts that apply to extraterritorial application of state laws. And, you know, I noticed last week your office filed an amicus brief in Suncor, which was about the California state laws and federal preemption. And the AG's amicus brief on behalf of Tennessee contended that Colorado state laws, causes of actions, would infringe on Tennessee's territorial sovereignty. And said that it's – and complained that it's increasingly threats to the territorial sovereignty come not from the federal government but from other states trying to protect their regulatory authority beyond their borders. Is the concern that that office expressed in that other case not applicable to this case? I don't think so, Your Honor. In a case like Suncor, so, for example, here we might be having a different conversation if the statute applied to an adult in Illinois recruiting a minor in Illinois to obtain an abortion in Illinois that's illegal in Illinois. The hypothetical, Your Honor, posed to me and the type of applications that I think this law covers involve adults who stretch into Tennessee. And when conduct is objectively occurring in Tennessee, it doesn't raise the same types of extraterritorial concerns that laws like the law at issue in Suncor. Even to the point that it could prosecute a resident of a different state? I think if a resident of a different state was sending illegal drugs into the state of Tennessee, the state of Tennessee could likely prosecute that person. And so all the same way, someone who is sending illegal medicine or illegal abortion pills into Tennessee could likely be prosecuted by Tennessee as well. Once the conduct stretches into Tennessee, I think it's a different scenario than one where there are no impacts in the state and the state is trying to regulate entirely out-of-state conduct. And does Bigelow not already speak to that? I believe Bigelow was at the time of Roe when there was a constitutional right to abortion, and we're in a different factual circumstance now where states have the ability to prohibit abortion. But I will say that even in this case, even if you think that the statute is unconstitutional facially or as applied, the relief that the district court entered was too broad and it should be limited to the parties and to the unconstitutional applications. But do you not think we're bound by Bigelow? I just want to make sure I understand. Not necessarily, Your Honor. Is there no further questions? Okay, you'll get your rebuttal. We'll hear from the other side. Thank you. Good morning or good afternoon. Good afternoon, Your Honor, and may it please the court, Bill Powell on behalf of the plaintiffs, Rachel Welty and Afton Bain. The plaintiffs in this case are two of Tennessee's most prominent abortion rights advocates. They speak out publicly in favor of abortion access. They provide information. What are the things they do that you would say count as recruitment? Sure. So I think there are three buckets of their conduct that Judge Gibbons identified in the district court opinion. How many that you think count as recruitment? I think all three of them count as recruitment. So the first is generalized advocacy in favor of access to abortion, and that includes things like Welty's former social media account that she stopped using, her public statements that abortion is safe, common, and normal. How is that inducing, persuading someone? Why isn't that information? Recruitment is the word they chose, and it's surrounded by words that are more aggressive, not less aggressive. So we have answers, I think, both with respect to how to read the law and then how to match that up with what our clients do. And of course, as already discussed, for standing at least, if that's what we're talking about, they only have to be arguably prescribed. I'm focused on the meaning of the statute. I'm inclined to think you're right on Article III, so I'm focused on the meaning of the statute. Understood, Your Honor. So with respect to how... Good news initially. Sure, Your Honor. So in terms of how to read the word recruit, the dictionary definitions of recruit, if you put them together, I think have essentially the meaning that the Ninth Circuit did when it kind of put the definitions together, and that is to persuade, induce, enlist, encourage someone to either carry out a task or to participate in an undertaking. And there are many examples of recruiting that I think do not require an intent to persuade. So imagine a high school football player who grows up in Tennessee. They love the volunteers. Their room is painted orange and white. They've got a big poster of Peyton Manning, which may be a dated reference. And what they really want to do is play for the Vols. Still, the team can recruit that person, even though they've already made up their mind, by bringing them on a recruiting visit, offering them a scholarship. And likewise, in the kind of employment situation, you could have a recruiting event. The coach is still going to say things like, this is a good idea. It's good you paint your room orange. Yes, and my clients... I want you to come here. And just because they end the conversation with, but I want you to make this decision for yourself, that's actually a very good sign of persuasion. You know, you're persuading, persuading, persuading, and then you claim to let them decide. I'd call that persuasion. So whether or not the statute... I think the statute doesn't require persuasion, but even if it does... Do you think the football coach of Tennessee would say he's not involved in persuasion? I think often he would be in persuasion, but he wouldn't necessarily be trying to change someone's mind, which is what I understand the other side here to have defined persuasion to mean. Because there's a lot of other things that can be persuasion besides just changing someone's mind about something they don't want to do. And my clients testified that they do a lot of encouraging of people, especially skipping to the third bucket of their activities, the individual counseling. I think it's quite helpful to look specifically at Plaintiff Bain's testimony about that counseling. And she said, she was asked specifically, do you intend to persuade? And the very first thing she said was, it's ambiguous because oftentimes these are young people who are at their most vulnerable point. They don't understand the system. They need information that they will make an informed decision to seek an abortion. And then right after that, she said, she advises vulnerable minors and she, quote, feels compelled to give that person permission to make the choice to have an abortion. Once the decision is made, I'm wondering what your response is to the other side. You know, how is it still recruitment? If a decision is made and there's still this counseling and back and forth about how to, you know, access this health care service a couple of states away, how is it recruitment? Right. So I think Judge Strange made the right point about that earlier, which is that maybe unlike the football hypothetical where there is a set decision point where you've signed your letter of intent, there isn't something like that with abortion up until you have the abortion. But minors might be reconsidering their decisions. They might be trying to think about various factors in their life. They might be thinking about their plan, where they're going to go, maybe how they're going to obtain pills. And encouragement during that decision-making process very well could be the thing that changes their decision, that induces them to make that decision. And my clients are not neutral about abortion. Yes, in these conversations, they say we want the people to make the decision that's best for them. But they believe that abortion is a good option for many people. They're pro-choice, not pro-abortion. Is that fair to say? So I think that the reading of the statute...  I don't think that they have sort of a Bill Clinton view of abortion, that abortion should be legal but limited. I think they actually do think that for many people, abortion is a good option. And so for that person, they may be pro-abortion at the same time. They're pro-choice and pro-abortion. I think how I would like to answer that question is by saying exactly what I think they believe, which is what I think they believe is that they don't go out and try to make anyone have an abortion who doesn't want to have an abortion. So in that way, I guess pro-choice would be fair to say. But they aren't totally neutral that a person should just make a decision kind of free from any influence by them. They think abortion is a good option, and they explain to people why it might be. One thing that's just odd about this case is why I perfectly understand your Article III position, that you should have the right to go to court to figure out what this means. What I find puzzling, if not baffling, is why you're pushing for the broadest reading of the statute. It just seems like that doesn't make any sense. You would think your goal would be to come here and say the word's recruit. That obviously means very active, significant conduct. The statute shouldn't remotely apply to my clients, and we're here to make sure it doesn't. End of story. So this court's, I think it was just last week, decision in Fisher II is why that doesn't work for my clients. Because there's nothing this court can do to help me out if you wanted to adopt a narrowing construction. And that's because under Pennhurst, you cannot issue an injunction telling the state courts to apply a narrower interpretation of the law. And your decision narrowing the law would not be binding in state court, and they might well disagree with it. So once we've shown that Article III injury of a chilling effect on our speech based on the chill to the First Amendment, the only way to remedy that First Amendment harm is with a constitutional remedy. But the assumption isn't that everyone is wayward and not going to follow the law. If we issue a decision that says it has these narrow applications, 99 percent of the time that works pretty well. And yes, you can have a very aggressive state attorney general decide to do something, and then we'll play that card when it happens. But I think you start with the assumption that people are going to follow the decision. Certainly, Your Honor. So even if this court were to issue a narrowing interpretation that said this law only applies to the intent to persuade, my clients could still readily be prosecuted under that statute because they testified that they know that their speech in the past has persuaded people to have an abortion, and yet they intentionally continue to engage in that exact same speech. And that is how every day of every week prosecutors prove intent. That you did something in the past that you knew had a certain result, and that you continue to do that conduct. Personally, I was inclined to say they've not done a single thing yet that is covered by the statute. That's my view from what I've seen. If that were the case. Why is that a problem? Because that view might not be shared by the defendants in this case. That is our primary concern. And they have not disavowed prosecution against my clients. And we face a credible threat of enforcement. I thought they have. I thought the 11 district attorneys have disavowed it. They have not disavowed it. They have not disavowed prosecution. So the Supreme Court in Childs just applied this factor in its standing analysis there. And what happened in Childs was that Colorado argued at every stage of the litigation. I'm not asking that question. I thought in this case they said your client's conduct did not apply. No. The defendants have never come in. They did not respond to the letter. They have not testified or submitted declarations, even though the district court invited them to do so. The only thing they've done is argued that my clients lack standing. But that is not a disavow under the Supreme Court's precedent. Do we look just to whom do we look in determining how this statute is written or interpreted? Is there not evidence in this record that the sponsor of the bill found your client's conduct to be the very definition? How do you think we need to decide what recruitment means in the face of that type of statement regarding the actual language of this act? So certainly with respect to standing, at least as to what's arguable, it has to be arguable that we're covered when three judges of the Ninth Circuit said that we were covered, the district court here found that we were covered, and exactly to your point, the sponsor of the bill said about my client's exact speech, her tweet, that that's what recruitment looks like. And to top that off, the other side's amici in this court argues that we are covered and should be prosecuted forthwith. And so it certainly seems like a very plausible reading of the statute that we are covered. And I think it is the best reading that it applies based on the dictionary definitions of recruit, that it applies beyond just intent to persuade. But again, even if it were limited to intent to persuade, we are arguably covered, and that creates a chilling effect, a First Amendment injury that this court can remedy with either an as-applied or a facial holding. Do constitutional avoidance principles apply here? Constitutional avoidance principles could come into play, but again, what matters for constitutional avoidance is whether you are avoiding the constitutional harm. And here, the injury that all of these pre-enforcement standing cases are about is the chilling of speech, and you cannot remedy that chilling effect solely through the narrowing construction because it would not be binding in state court, and I think many people are still going to be chilled, worrying that they could be prosecuted, especially on an intent to persuade standard. Just because my clients don't engage in an intent to persuade, you think, still many others could, and I believe that, again, they could easily be prosecuted for an intent to persuade. Well, and I want to ask about the others. I understand that your reading of the statute matches, you know, right, with an as-applied remedy that you might be seeking for these two plaintiffs. You're also seeking a facial remedy, and help me understand why, under Moody, the net choice, you know, we shouldn't send it back for more, you know, robust accounting of these constitutional versus unconstitutional applications. Sure, Your Honor. Two responses to that. The first is that the Supreme Court has said, and said in the Iancu case, that where a law does viewpoint discrimination is not just content-based, but engages in viewpoint discrimination, that you don't apply the overbreadth analysis. Are you going to push hard on viewpoint after the sex trafficking examples? Are you going to push hard that this is a viewpoint discrimination case just out of curiosity? I believe that this statute is. So in a sex trafficking situation, when you have a law that says you can't use speech that promotes sex trafficking, very viewpoint-driven, but then to the same child say, I want to help you get away from this prostitution, I have a same, I have a haven for you, you can do that speech. All right, that's about as viewpoint as it gets, and you're saying you can't do that because that's viewpoint discrimination? Not at all, Your Honor. That's not a viewpoint discrimination problem, and the way to tell that is the RAV case. So what the RAV case says is that all the unprotected categories of speech, like speech integral to criminal conduct, all of those are viewpoint-based, right? So an aiding and abetting murder statute. If you say something in favor of the murder, that's proscribed under the statute. If you say something against... It's driven in the same way. It's against taking a child who doesn't want to get an abortion, persuading them to get an abortion, and that's the speech that's forbidden. If it only... Not to allow abortion, all right? That's what they've decided to do, and it's identical. It's not identical because in that other context, all of the underlying conduct is illegal, and therefore all of the speech is integral to criminal conduct. That's not true here because the statute says it applies regardless of where the abortion occurs, so it applies to perfectly legal abortions in Illinois, and speech about those abortions is protected, and that's totally different than in the child sex trafficking context where all of the underlying conduct is proscribed, and all of the speech is in an unprotected category. Here we have a lot of protected speech, and once you have that protected speech, then you cannot discriminate based on viewpoint. There's no... So in other words, you X out everything that happens in Tennessee and do this viewpoint thing solely based on out-of-state situations, and you're saying, oh, and in that situation, we don't do the normal moody numerator-denominator? I mean, that is wiping the chess pieces off the table that don't work for you and saying, well, I've got a queen left. I can win. So I don't want to fight too hard on viewpoint versus overbreadth because I think... Go back to his question. Don't we have to do the numerator-denominator? You have Article III standing. We figure out what the scope of the statute is. We say what's in the potential number of applications, and then we say what's potentially First Amendment prohibited. Shouldn't... Isn't that something that needs some work here? I think that Judge Gibbons' opinion did that exact analysis. She did this after Moody v. Net Choice. She cited Moody v. Net Choice, and she went through all of that analysis. Moody has two steps, exactly as you said, but the other side substantially overstates the evidentiary standard that's required under Moody. So first, you explore the range of applications, and then second, you weigh, not count, the unconstitutional applications against the constitutional applications. So, for instance, in Ashcroft v. Free Speech Coalition, there the Supreme Court was weighing nude depictions of teenagers that were child porn against nude depictions of teenagers in Shakespeare, and they didn't count exactly how many copies of Romeo and Juliet had been sold. They weighed the value of the protected speech, and they said this substantially outweighs the unprotected speech. This court's en banc decision in the connection distributing case made the same point, that it's not a 10 percent or 20 percent cutoff. It's the language of Moody, for what it's worth, Camp. It is the language of Moody, Your Honor, respectfully. Moody said weigh the unconstitutional against the constitutional. It did not say count. It didn't have count, but it had applications, plural. Yes, absolutely, and so you have to weigh the applications. I totally agree with that. So you have to explore all of the potential applications. The district court did that here. So you have a lot of applications that are to legal abortions. That's all of the ones my clients talked about, and that is the text of the statute. The text of the statute would have been the easiest thing in the world to write a statute that only applied to illegal abortions, and they intentionally didn't do that. They wrote a statute that applied regardless of where the underlying abortion occurs and if it would be illegal in Tennessee. That's a statute that is aimed straight at legal abortions occurring in Illinois, occurring in Virginia, occurring in North Carolina, and as well as medication abortions, which our position throughout this case has been that medication abortions are legal, and it's never been contested on the other side that the medication abortions are legal applications. And we had evidence in the record about this. We had, so the New York Club Association case, as you looked at text and fax, so I think the text gets you a lot of the way there here because, again, it has that regardless language. It says we're looking at a lot of perfectly legal abortions. In addition to that, we had the sponsor statement that Judge Strange made earlier that it's intended specifically to apply to legal out-of-state abortions. We also had the fiscal note that the legislature prepared in drafting the statute that assumed that it would apply only to abortions occurring in Illinois, only to legal abortions, and did all of the math about how this statute would apply based on those only Illinois abortions. And then on top of that, there was a lot of testimony, actually, from my clients about sort of how medication abortion was playing out on the ground, what people were doing in real life, and those as well showed what young women are actually doing is they're going out-of-state for legal abortions or they're getting medication abortions. There's not much evidence at all here of illegal abortions occurring in Tennessee or in other states. And then on top of that, the Illinois amicus brief on our side includes a number of government reports that I think would be appropriate for this court to consider that talks about where people are traveling for abortion. And the other thing I would say is that if you're going to do a... I see my time has expired, Your Honor. I'm sorry. No, I mean, I think we've got other questions. Just a question about the scope of the injunction. How far does this injunction go? It says, I think it's the last sentence, defendants are enjoined from enforcing this statute. So what is your take on how broadly that sweeps? It's just talking about these district attorneys. Does it apply in the other two districts? It does not apply in the other two districts, I believe. It may have just been an unintentional stray word in the district court's opinion that it said statewide, but the injunction is not statewide because it applies only to these defendants. These defendants are all in the middle district. But it does apply to people beyond your... They did grant non-party relief in the sense that it... That's your reading. Okay. Yes. And is that appropriate? In other words, you could have a class action. I think class actions are a difficult alternative in the First Amendment context, but I also think it's appropriate under CASA. So CASA dealt with a universal injunction that was nationwide against the federal government and looked to the meaning of the Judiciary Act of 1789. It was a statutory decision in CASA. And here, where you're dealing with a state law and with a narrower geographic scope, I think you look to both a different time period of history and to a different set of analogs when considering... Federal courts. Yes, the power of the... So the power of federal courts, though, in a case like this and a challenge to state law, comes from a lot of stuff that was happening at the second founding. So the 14th Amendment made the constitutional rights apply against the states. The federal question jurisdiction statute gave you the right to issue equitable remedies against unconstitutional state laws. That came about in the 1870s. And Section 1983, which is the cause of action here, also is from the 1870s. So I think you look to that period of the 19th century and looking for analogous injunctions. And even in that... Looking to that period would have made no difference in CASA because for a nationwide injunction, there was no evidence of them at that time either. But for injunctions like this within a single district, there's quite a bit of historical analogs from that period of the mid-19th century. There are taxpayer suits. There are suits that enjoined... Maybe I didn't follow your exchange with Judge Rich. Single district. You're saying this only applies in the central district? The middle district of Tennessee. That's correct, Your Honor. But it applies beyond these claimants? That's true. Does it apply to district attorneys that are outside or that are within the central district? The defendants who are bound are the defendants in this case who are the district attorneys who are only in the middle district of Tennessee. Oh, yes. I believe we did to all of them who have jurisdiction within the middle district. I see. So you think it's just a typo or a mistake that it suggests going to the other two districts? I don't think it suggests going to the other two districts in the sense that it didn't consider those and it only goes against these defendants and it's just a principle of Tennessee law that these defendants can only enforce within their own jurisdiction and different district attorneys who are not before this court are fully responsible for prosecuting crimes who could possibly be enjoined in either of the other two districts. And why is it necessary for complete relief as to your two clients that it goes beyond to other advocates? Right, so the arguments I was just talking about are arguments for why we can go beyond complete relief in this context, but even if we're limited to complete relief. Just stick with the assumption that what CASA said is good for this case as to what federal courts do. You might not agree with that, but just stick with that. What would be the way in which you would respond to why that complete relief is necessary? Because it's complete relief as to the two claimants, I would think. Your Honor, the First Amendment needs breathing space to survive as the Supreme Court has held many times, and so I think the First Amendment may be different in this regard based on what over-breadth analysis requires. So in an over-breadth case, it can be brought... I thought the key point of that was not to let your rulings go everywhere. I mean, it's a nice federal court concept but I thought the point, though, was to allow people that actually weren't injured directly or not directly covered to bring claims they couldn't otherwise bring assuming they have what other bare minimums of Article III standing they need. I thought that was the key insight of over-breadth. No? So it is true that that is a feature of over-breadth, that it permits that, but I actually think that's a more suspect application of over-breadth analysis where the plaintiff themself is not covered, and I think over-breadth analysis is more at home where instead of relying only on third-party standing, the plaintiff themselves are covered by the law and injured by the law or chilled by the law, and then they are the ones who are much better positioned, I think, actually, to represent those third parties when it comes to their injuries. And I would note that in Moody v. Nitchoys, they are the plaintiffs themselves, Facebook and the like, were the ones who were making the First Amendment argument at their newsfeed and so forth, and the Supreme Court did not say, you know, you're not allowed to do this because you're not injured. It is. So I think it is certainly allowed to be used by injured plaintiffs, but I think your point is a key one because it really wouldn't make a lot of sense in an over-breadth case where we had the different situation where the plaintiff wasn't injured to give relief only to that plaintiff and then not give any relief to those third parties who are the ones who actually have the First Amendment harm. And so I think what's going on in over-breadth is a recognition by the courts that because of the paramount importance of the First Amendment and the breathing space that it needs to survive, that you can, for complete relief, go beyond the parties. Is that what the Supreme Court was addressing in Hansen? Was the Hansen case speaking to guard against certain harms, the over-breadth doctrine allows a litigant, even an undeserving one, to vindicate the rights of the silenced as well as society's broader interest in hearing them speak? That's... Is that a part of the argument that underlies what the remedy should be? That's correct, Your Honor. In Hansen, the Supreme Court ultimately cast some doubt on the use of over-breadth analysis by a plaintiff who wasn't injured, but here we don't have that problem because we do have the plaintiff who is in the crosshairs. Again, the one person identified as who this law would definitely apply to was one of my clients. There's at least one person who was injured at that point. Your Honors, plaintiffs testify that they never intend to persuade. Continuing on with the testimony that my friend on the other side was quoting to you, plaintiff Bain was asked, when you communicate with that girl, is your goal to provide her information about abortion to the former? This is at record 39-1 at page 16. On pages 23 and 25 of plaintiff's second brief, they say that their client's intent is never to persuade. With respect to whether the defendants here have disavowed enforcement, they have consistently and repeatedly. How have they disavowed it? They haven't filed an affidavit. How have they disavowed it? They have disavowed enforcement repeatedly in this litigation. How, I'm sorry, how have they disavowed it? They have said in the briefing and the litigation that they don't. But your briefing does not bind them necessarily. It is not a linear thing that an attorney can stand up and commit on behalf of that attorney's client to disavow all enforcement. What is in the record that verifies their disavowal? We think under this Court's decisions in Miranda and Pavia, our clients would be bound by their in litigation disavowals. But taking a step back from that, under this Court's decision in McKay, the question is whether defendants have refused to disavow enforcement. And so where the record is silent coming into the case, that is not a factor in favor of the plaintiffs. I think here Friends of Georgia's is particularly instructive. There the defendant district attorney had actually indicated an intent to enforce the statute, but only generally. And this Court held that even that did not equate to a refusal to disavow enforcement because it was not an instance where the attorney, when faced with the specific conduct that the plaintiffs planned to engage in, had refused to disavow. And so here, when previous to the litigation, the district attorneys were never faced with the conduct the plaintiffs intended to engage in, and they never said anything one way or the other. And the moment that plaintiffs came into court and testified as to their conduct, the district attorneys have been consistent the entire time that they do not intend to enforce the statute against that conduct.  Yes, through our briefing. Because the statute does not apply to plaintiffs' conduct, that dooms their as-applied challenge. With respect to the facial challenge, there are many constitutional applications of this law, as even the plaintiffs acknowledge in their briefing, there are constitutional applications. That meant that they had to make a record so that the district court had the ability to compare those applications. Here, this court's decisions in connection distribution and Glenn V. Holder are very helpful. What those cases contemplate is evidence about the number of possible unconstitutional applications. So it is not... What about the admission that the application of the statute, regardless of your location, is included? So are you considering potentially unconstitutional actions against individuals in other states? If, in fact, that portion of it is incorrect, then wouldn't you... Just to emphasize, I had the same question. He leaned really hard on the Moody analysis. His examples, I thought, were almost all out of state. So I'm just curious, how do we do that? I mean, let's assume for the sake of argument it's a problem if it's, you know, the out-of-state ones where it's, quote, legal, right? So I found myself a little at sea as I listened to him and I agree with Judge Stranch. I was really curious what your response to that was. Plaintiff, we have not argued in this case that it would be constitutional to apply the statute as to intentional persuasion to get an abortion that would be legal where the abortion is held. But we think there are substantial constitutional applications of the statute to any abortion that would be illegal in the state where it was performed. So that would be in any of those dozen or so states where abortion is illegal or in any of the states where parental consent is required and plaintiffs don't have it or that, again... Even if they have a judicial waiver of that requirement? There can be a judicial waiver of that requirement but plaintiffs would need to bear this out in the evidence. They would need to show how often plaintiffs are being... They would need to show   able to get legal abortions versus illegal abortions. Did your fiscal note not make a difference in that? I don't think so,  Why not when all the monetary fiscal note is addressed to out-of-state legal abortions? Because I don't think the fiscal note covers the entire application of the statute and when... But it covers the cost. It might cover... The projection of the cost. It might cover the cost and it might be a projection of the cost but when we're trying to figure out what a statute means and what applications it covers, we look at the text of the statute and as plaintiffs acknowledge there are constitutional applications of the statute including to abortions that have... Elective abortions that happen in Tennessee and they needed to make a record for the district court to compare under the Supreme Court's decision in Net Choice v. Moody and this court's decision in Connection Distribution v. Holder. I see that my red light is on. I don't want to make this worse but forgive me. I'm just trying to make sure I'm following all of this. So let's just say for the sake of argument you're right about persuasion and we'll even say as applied, you're right. It doesn't apply to what they've done so far but we still have this obligation to figure out and we'll even say this is something for the district court to do in the first instance so I'm just trying to figure out how exactly do we describe this and let's put drugs to the side but I'm going to circle back to that so no drugs. So what are the     what's the universe of okay? So I mean you can't it's permissible it's a permissible application of the statute if it's someone trying to persuade someone to get an abortion in Tennessee because it's illegal there and we're saying it's persuasion so that's an okay and then you're agreeing it's it would be unconstitutional if the statute applied to someone taking someone to a state where it's legal. How would you for recruit to recruit someone to get you're recruiting them but you're taking them to a state where that it permits it. If it's recruiting that's not incidental to harboring or trafficking but if we just want to to simplify it if it was just one of the plaintiffs here talking to a minor and encouraging them and trying not encouraging and persuading them to get an abortion in the state of California we think that would be an unconstitutional application of the statute but we think if they were persuading them to get an abortion in a state that required parental consent without that parental consent that's a constitutional application of the statute as it would be to persuade them to get an abortion in a state where it is illegal as it would be to convince them to get any type of abortion that's elective in the state of Tennessee. So one I guess one thing I'm just puzzling over in my head as I'm thinking through this let's just say they're true recruiters like that's really what they want to do why are they not just going to go to the states where it's the most legal and the easiest to do it? The data doesn't bear that out your honor and these are things that plaintiffs would be in a full record if plaintiffs had made their showing but plaintiffs cite to the statistics from the Guttmacher Institute which tracks people who leave states for abortions or who get telehealth abortions through medication abortion in states We're not going to talk about that We're not going to I'll get back to it but it's too hard for me to All right well even if we just look at the people who are leaving the state to go to abortions if you look at the Guttmacher Institute website for people who are leaving the state to get abortions they aren't all going to Illinois some of them are going to Georgia which also has remarkably restrictive abortion laws some of them are going to North Carolina or Virginia or other states that have parental consent laws and even the Supreme Court On the drug one to simplify it let's just for now just assume that Tennessee is allowed to bar drug induced abortion Does it just become the same analysis we'll just kind of assume most of the states that ban abortions generally are going to ban the drug induced and the states that allow are going to permit and so it really doesn't Introducing drugs into the numerator and denominator doesn't really change things is what I'm imagining but I'm not sure I think it impacts the numerator and denominator as to the number of legal and illegal abortions that occur particularly with the number of people in Tennessee  affecting the states much because there's probably going to be overlap in permitting drug induced With respect to out of state applications I would expect a state that allows elective abortions without parental consent to also allow medication abortions without parental consent but it's not in the record and I can't speak to it If you had one last point you can make it but otherwise I did have one last point if you'll indulge me your honor Just with respect to the universal injunctions the Supreme Court said in CASA that a universal injunction is one that applies to anyone anywhere that is the injunction in this case it just so happens that the defendants under state law only have authority within their district but the injunction here bars them from applying this law against anyone and with respect to the sometimes broad language that the Supreme Court has used when describing overbreath challenges I would direct this court to look at Doran v. Salem which is one of the few Supreme Court decisions that actually found that a statute was unconstitutionally overbroad in a pre-enforcement challenge and there the Supreme Court limited the injunction to the parties it said neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs and the Supreme Court cited that decision in CASA as an example of a case that appropriately limited relief to the parties. Okay, listen, thanks very much to both sides. Lots of great briefing, very difficult case so we're really grateful for the excellent lawyering. Thank you to the lawyers that argued for answering our questions which we really appreciate and it isn't always easy but thank you very much and very grateful for your help. The case will be submitted.